UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUISIANA SHRIMP ASSOCIATION; JOHN BROWN; LARRY J. HELMER JR.; PENNY ZAR<br><br>    Plaintiffs,<br><br>    v.<br><br>JOSEPH R. BIDEN, JR. in his official capacity as President of the United States; GINA RAIMONDO, in her official capacity as United States Secretary of Commerce; NATIONAL MARINE FISHERIES SERVICE;<br><br>    Defendants. | No. 24-cv-00156<br><br>JUDGE: Judge Jane Triche Milazzo<br><br>MAGISTRATE JUDGE: Judge Eva J. Dossier |

**Federal Defendants' Reply Memorandum
in Support of Cross-Motion for Summary Judgment**

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I. The Record Supports NMFS's Decision to Require Skimmer Trawl Vessels 40 Feet and Greater In Length to Use TEDs. ................................................................................ 3

        A. The Final Rule Adequately Justifies Revoking the Prior Tow-Time Exemption ............... 3

        B. The Record Before the Court Confirms That Skimmer Trawl Vessels Fishing in Louisiana Inshore Waters Capture Sea Turtles. ............................................................... 4

        C. NMFS Considered the Reliance Interests of Louisiana Shrimpers and the Costs and Benefits of the Final Rule. ........................................................................................ 7

    II. The Final Rule Is Consistent with NMFS's Authority Pursuant to the Commerce Clause.... 7

    III. The Final Rule Does Not Rely on NMFS's Regulatory Interpretation of the ESA. ........... 10

    IV. No Remedy Is Necessary, But If The Court Disagrees, This Matter Should Be Remanded Without Vacatur. .............................................................................................. 11

CONCLUSION ......................................................................................................................... 12

# **TABLE OF AUTHORITIES**

| CASE | PAGE(S) |
|---|---|
| *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687 (1995) | 3, 10 |
| *Biden v. Texas*, 597 U.S. 785 (2022) | 3 |
| *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) | 3, 10 |
| *Ctr. for Biological Diversity v. NMFS*, 628 F. Supp. 3d 189 (D.D.C. 2022) | 11 |
| *Ctr. for Biological Diversity v. NMFS*, 2024 WL 3083338 (D.C. Cir. June 21, 2024) | 7 |
| *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020) | 3, 4 |
| *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) | 7 |
| *Gonzales v. Raich*, 545 U.S. 1 (2005) | 8, 9, 10 |
| *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) | 3, 10, 11 |
| *Louisiana, ex rel. Guste v. Verity*, 853 F.2d 322 (5th Cir. 1988) | 10 |
| *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) | 8 |
| *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021) | 3 |
| *United States v. Darby*, 312 U.S. 100 (1941) | 9 |
| *Wickard v. Filburn*, 317 U.S. 111 (1942) | 9 |

**STATUTES**

5 U.S.C. § 706(2)(A) ............................................................................................................. 11

16 U.S.C. § 1532(18) ............................................................................................................. 11

16 U.S.C. § 1532(19) ............................................................................................................... 3

16 U.S.C. § 1533(d) ........................................................................................................... 1, 10

16 U.S.C. § 1540(f) ............................................................................................................ 1, 10

**REGULATIONS**

50 C.F.R. § 17.3 .................................................................................................................... 11

50 C.F.R. § 622.50(a) .............................................................................................................. 2

**FEDERAL REGISTER**

81 Fed. Reg. 91097-01 (December 16, 2016) ......................................................................... 4

84 Fed. Reg. 70048-01 (December 20, 2019) ........................................................... 1, 3, 11, 12

## INTRODUCTION

To prevent the killing of thousands of threatened and endangered sea turtles listed under the Endangered Species Act ("ESA"), the Final Rule at issue in this case requires certain skimmer trawl vessels in the southeastern U.S. shrimp fisheries to install turtle excluder devices ("TEDs") in their nets. 84 Fed. Reg. 70048-01 (Dec. 20, 2019) ("Final Rule"). The National Marine Fisheries Service ("NMFS") promulgated the Final Rule pursuant its authority under ESA Sections 4(d) and 11(f). 16 U.S.C. §§ 1533(d), 1540(f). Plaintiffs' factual and legal arguments concerning the Final Rule in this case lack merit, and this Court should affirm the Final Rule based on the administrative record.

As to Plaintiffs' factual arguments, the record before the Court confirms that threatened and endangered sea turtles occur in both inshore and offshore waters and that skimmer trawl vessels capture ESA-protected sea turtles in these waters. The Final Rule, which requires skimmer trawl vessels 40 feet and greater in length to use TEDs, reduces but does not eliminate mortality that results from the capture of sea turtles. The record before the Court confirms that sea turtles frequently drown in skimmer trawl gear, even when shrimpers comply with "tow-time" limits intended to reduce sea turtle mortality. Interactions between skimmer trawl vessels and sea turtles continue to kill hundreds if not thousands of sea turtles every year. Therefore, Plaintiffs are fundamentally incorrect in suggesting that skimmer trawl vessels encounter sea turtles infrequently or that such encounters are not harmful to sea turtles. *See* ECF No. 36 at 9.

As to Plaintiffs' legal arguments, the record before the Court confirms that NMFS considered the best scientific data available and lawfully exercised its ESA authority to promulgate the Final Rule. There was no refusal by NMFS to consider any supposedly contrary

1

data from the Louisiana Department of Wildlife & Fisheries ("LDWF"), because such data was never submitted to NMFS by LDWF or any other party in the first instance.

Plaintiffs' Commerce Clause arguments fail because Plaintiffs do not show that any individual Plaintiff or member of the Plaintiff organizations engages in shrimping on their 40-foot or greater skimmer trawl vessel on a purely non-economic basis. As a legal matter, Plaintiffs incorrectly suggest that the classification or distinction between recreational and commercial shrimpers potentially subject the TED requirements in inland waters "is a matter of federal regulation, not an inherent characteristic of the activity itself." ECF No. 36 at 17. NMFS does not issue permits for either commercial or recreational vessels to shrimp in state waters. *See* 50 C.F.R. § 622.50(a) ("For a person aboard a vessel to fish for shrimp in the Gulf [exclusive economic zone ("EEZ")] or possess shrimp in or from the Gulf EEZ, a commercial vessel permit for Gulf shrimp must have been issued to the vessel and must be on board."). Rather, the states regulate commercial and recreational shrimping in state waters. *See, e.g.,* 2024 Louisiana Recreational Fishing Regulations, *available at* https://www.wlf.louisiana.gov/assets/Resources/Publications/Regulations/2024-LDWF-Fishing-Regulations.pdf (last visited Oct. 1, 2024). Even assuming any purely non-economic shrimping occurs in state waters, it does not render such activity beyond the reach of the Commerce Clause. Each court that has reviewed the ESA in relation to the Commerce Clause has confirmed that local and non-economic activities are within the appropriate scope of ESA regulation. *See* ECF No. 31-1 at 32-34. Plaintiffs' Major Questions Doctrine arguments also fail because Congress has clearly and unambiguously conferred authority to NMFS to regulate activities such as shrimping by skimmer trawl vessels, which kills thousands of sea turtles every year.

Contrary to Plaintiffs' suggestion, the Final Rule is not premised on the regulatory definition of "harm" as reviewed and upheld by the Supreme Court in *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687 (1995). The Final Rule encompasses the taking of sea turtles by killing, which is clearly subject to the plain language of the ESA, 16 U.S.C. § 1532(19) (definition of "take"). Plaintiffs' claims do not involve NMFS's regulatory interpretation of any ESA provision; therefore, Plaintiffs' claims do not necessitate any deference to NMFS based on the reasoning in *Chevron USA. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984) or otherwise implicate the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

For all these reasons, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment as to all claims.

## ARGUMENT

**I.** **The Record Supports NMFS's Decision to Require Skimmer Trawl Vessels 40 Feet and Greater In Length to Use TEDs.**

    **A.** **The Final Rule Adequately Justifies Revoking the Prior Tow-Time Exemption.**

NMFS fully explained the basis of its decision to require skimmer trawl vessels 40 feet and greater in length to use TEDs in the Final Rule published December 20, 2019. 84 Fed. Reg. 70048-01 (AR009464). NMFS explained that "tow time limits may not be as effective in reducing sea turtle bycatch and mortality as previously thought" and thus "the most effective protective measure for threatened and endangered sea turtle populations is to reduce the total time sea turtles are entrained in a skimmer trawl by using TEDs." *Id.* at 70050 (AR009466).

Plaintiffs' citation to *Texas v. Biden*, 20 F.4th 928, 992 (5th Cir. 2021) (internal citation omitted), *see* ECF No. 36 at 7 & 12, appears to be misplaced, as that decision was reversed by

*Biden v. Texas*, 597 U.S. 785 (2022). To the extent Plaintiffs intended to quote *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1913 (2020) ("when an agency rescinds a prior policy[,] its reasoned analysis must consider the alternatives that are within the ambit of the existing policy." (quotations omitted)), NMFS explained the basis of its determination to expand the required use of TEDs among skimmer trawl vessels in relation to previous management actions. NMFS explained that, after publication of the 2013 Withdrawal Rule, NMFS completed additional testing and developed new TED configurations to allow small turtles to effectively escape the trawl nets. 81 Fed. Reg. 91097-01, 91098 (Dec. 16, 2016) (AR002168). In addition, NMFS cited information calling into question previous determinations about the effectiveness of the alternative tow time requirements. *Id.* The record before the Court fully supports these determinations, and Plaintiffs fail to cite any credible contrary evidence.

      **B.    The Record Before the Court Confirms That Skimmer Trawl Vessels Fishing in Louisiana Inshore Waters Capture Sea Turtles.**

Plaintiffs are flat-out wrong in asserting that shrimpers operating skimmer trawl vessels 40 feet and greater in length, whether operating for commercial or (allegedly) non-commercial purposes, "are unlikely to affect sea turtles in any meaningful way." ECF No. 36 at 19. It is *undisputed* that when NMFS placed federal observers on skimmer trawl vessels during 2012-2014, those "observers documented the capture of sea turtles. . . ." Plaintiffs' Response to Defendants' Statement of Material Facts ¶ 6, ECF No. 36-2 at 3. The record before the Court further confirms that these observations included captures that occurred while fishing in inshore waters off Louisiana. AR010907, 010924 & 010955. These observations also included "fresh dead" Green and Kemp's ridley sea turtles that had been captured by skimmer trawl vessels. AR010955 and AR010965 Table 5. Of course, these direct observations represent only a tiny fraction of the overall sea turtle mortality resulting from shrimping by skimmer trawl vessels.

4

The 2014 NMFS biological opinion estimated annual skimmer trawl bycatch mortality of 2,017 sea turtles. AR011324 (Table 39). The total number of interactions and captures was even higher. *See id.* The Final Rule was anticipated to "result in a conservation benefit of 801-1,168 sea turtles annually in the Southeastern U.S. shrimp fisheries." 84 Fed. Reg. at 70049 (AR009465). Even with the use of TEDs by vessels 40 feet and greater in length, skimmer trawls will continue to kill a significant number of sea turtles.

The most recent NMFS biological opinion concerning the implementation of sea turtle conservation regulations under the ESA and the authorization of the southeast U.S. shrimp fisheries in federal waters under the Magnuson-Stevens Fishery Conservation and Management Act dated April 26, 2021, estimated annual bycatch mortality of 1,364 sea turtles after implementation of the Final Rule. AR012498. Of course, sea turtle mortality caused by skimmer trawl vessels represents only a portion of sea turtle mortality caused by all gears combined. *See id.* Non-lethal interactions are higher still. *See id.*

Plaintiffs cite information provided by the Louisiana Shrimp Association suggesting that "the average skimmer vessel would likely see one (1) turtle mortality, cause of death unknown, and approximately once every eight (8) annual shrimping years." ECF No. 36 at 9 (quoting AR008622). Plaintiffs' figures are based solely on direct observations of dead sea turtles by National Oceanic and Atmospheric Administration fishery observers during 2012-2014. *See id.* Plaintiffs' figures do not account for all sea turtle mortality described above, as estimated by NMFS based on a large number of data sources and variables associated with shrimping effort, turtle catch rates, turtle mortality rates, effectiveness of TEDs, and compliance with existing regulations. AR011324.

Plaintiffs incorrectly suggest that NMFS ignored comments from LDWF, AR003169, and Mississippi officials, AR008608, that purportedly raised concerns that NMFS's data exaggerated the frequency of sea turtle interactions in inshore waters. *See* ECF No. 36 at 9. The LDWF comment letter states that estimated total average effort may be overestimated because it includes "effort by smaller vessels, which according to the DEIS 'operate in shallow waters (e.g., 4-5 feet) of bays and lakes where sea turtles may not be expected to be as abundant as open water estuaries and in deeper channels.'" AR003169. The LDWF comment letter further notes that observer data from skimmer trawls were collected on vessels that were more than 26 feet in length. AR003169. The Mississippi comment letter recommended that NMFS "more fully investigate all possible causes of sea turtle mortality" and did not dispute any particular mortality estimate. AR008607. In response to these comments and comments received from other stakeholders, NMFS exercised its discretion to exclude smaller skimmer trawl vessels from the TED requirement. As informed by comments received, NMFS adopted a new preferred alternative requiring skimmer trawl vessels 40 feet and greater in length to use TEDs designed to exclude small turtles instead of virtually all skimmer trawls, pusher-head trawls, and wing nets (butterfly trawls) rigged for fishing as originally proposed. AR001654 (FEIS Abstract); AR001679 (Description of Alternative 8); AR001811 (Effects of Alternative 8); AR002069 (Comment 64); AR002071 (Record of Decision); AR009441 (Decision Memorandum). The record before the Court refutes Plaintiffs' assertion that NMFS ignored comments it received, even if the Final Rule did not exactly match the outcome Plaintiffs may have preferred.

Plaintiffs continue to insinuate that NMFS has attempted to dismiss contrary data including the May 2021 LDWF comment letter, which Plaintiffs acknowledge post-dates the Final Rule. ECF No. 36 at 11. Although Plaintiffs insinuate that such data was available at the

time of the rulemaking, *see id.,* Plaintiffs fail to point to such data in the administrative record. The record before the Court clearly refutes any assertion that NMFS failed to adequately consider a range of management alternatives to the TED requirement incorporated in the Final Rule. AR001675-81.

   C. **NMFS Considered the Reliance Interests of Louisiana Shrimpers and the Costs and Benefits of the Final Rule.**

  Federal Defendants already demonstrated that Plaintiffs failed to support their claim of alleged reliance interests and Plaintiffs' reply brief includes no new information or argument that advances their arguments. Assuming *arguendo* that Plaintiffs could demonstrate some reliance interest in maintaining the previous tow time exceptions for skimmer trawl vessels, the agency has provided a reasoned explanation for its change in policy. NMFS gathered scientific data on the incidental mortality of sea turtles associated with the skimmer trawl fisheries, thoroughly explained why tow time restrictions were not sufficiently effective in reducing sea turtle bycatch and mortality, and provided the required reasoned explanation for a TED requirement for certain skimmer trawl vessels, as explained above. NMFS has provided the requisite "reasoned explanation." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16 (2009).

  The record also confirms that NMFS considered public comments on the anticipated costs and benefits of the TED requirement and modified the minimum vessel length covered by the requirement from 26 feet to 40 feet in response to these comments. AR009472. Moreover, the U.S. Court of Appeals for the D.C. Circuit reviewed and upheld the Final Rule, concluding that the "final rule reflects a policy choice, which was adequately explained by its consideration of the rule's costs and benefits. . . ." *Ctr. for Biological Diversity v. NMFS*, No. 22-5295, 2024 WL 3083338, at *3 (per curiam) (D.C. Cir. June 21, 2024). NMFS has properly accounted for the anticipated costs and benefits of the Final Rule.

7

## II. The Final Rule Is Consistent with NMFS's Authority Pursuant to the Commerce Clause.

Plaintiffs' argument that the Final Rule violates the Commerce Clause fails because it is premised in part on their incorrect assertion that "[t]he Final Rule impacts non-commercial skimmer trawl operations that engage in shrimping for personal and family consumption—activities that are purely intrastate and do not involve interstate commerce." ECF No. 36 at 16. It strains credulity for Plaintiffs to assert that any shrimper owns and operates a skimmer trawl vessel 40 feet or greater in length for purely non-commercial purposes. Plaintiffs apparently could not find a declarant who would attest to shrimping in this manner. Acy Cooper, the President of the Louisiana Shrimp Association, states that he is a commercial shrimper and makes no claim to shrimping for purely personal use. *See* ECF No. 36-1 ¶ 1. The proffered declaration does not establish that Plaintiffs have suffered any injury that implicates their Second Claim for Relief concerning an alleged violation of the Commerce Clause. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (A plaintiff "bears the burden of showing that he has standing for each type of relief sought.").

Even if Plaintiffs had demonstrated that the membership of the Louisiana Shrimp Association includes one or more purely non-commercial skimmer trawl shrimpers and Plaintiffs could therefore demonstrate standing, we have shown that non-economic, local activity can be regulated if that regulation is a necessary part of a more general regulation of interstate commerce. *See Gonzales v. Raich*, 545 U.S. 1, 37 (2005) (Scalia, J., concurring). Plaintiffs suggest that the facts here are unlike the federal government's regulation of marijuana in *Raich,* because non-commercial skimmer trawl operations do not substantially affect interstate commerce. ECF No. 36 at 17. Plaintiffs' attempt to distinguish *Raich* makes no sense. According to Plaintiffs' reasoning, the federal government could never regulate a controlled substance that

8

substantially affects interstate commerce if some individual claims to grow or possess it for purely personal use. The Supreme Court rejected such an argument in *Wickard v. Filburn*, 317 U.S. 111, 127–128 (1942), which rejected a farmer's contention that Congress' admitted power to regulate the production of wheat for commerce did not authorize federal regulation of wheat production intended wholly for the farmer's own consumption. "*Wickard* thus establishes that Congress can regulate purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Raich*, 545 U.S. at 18.

As we have shown, each case that has reviewed ESA-related Commerce Clause challenges has concluded that Congress has the power to reach allegedly local or non-economic activities that affect ESA-listed species. *See* ECF No. 31-1 at 32-34. Federal Defendants are unaware of any case that has held that the ESA violates the Commerce Clause, and Plaintiffs have not cited any such case. Thus, assuming the regulation of commercial skimmer trawl vessels is a legitimate exercise of the government's commerce power, "[t]he relevant question is simply whether the means chosen are 'reasonably adapted' to the attainment of a legitimate end under the commerce power." *Raich,* 545 U.S. at 37 (Scalia, J., concurring) (citing *United States v. Darby,* 312 U.S. 100, 121 (1941)). As informed by comments received, NMFS adopted a new preferred alternative that exempted smaller skimmer trawl vessels from the requirement to use TEDs. *See* AR002069 (Comment 64). Thus, the means chosen by NMFS to avoid the killing of sea turtles (i.e., requiring skimmer trawl vessels 40 feet and greater in length to use TEDs) is reasonably adapted to the exercise of NMFS's ESA authority, which has been repeatedly reviewed and upheld on Commerce Clause grounds.

Congress has clearly spoken in giving NMFS authority to regulate the killing of sea turtles via ESA sections 4(d) and 11(f), which direct NMFS to issue such regulations as "deem[ed] necessary and advisable to provide for the conservation of such species" and "as may be appropriate to enforce this [Act]." 16 U.S.C. § 1533(d); *id.* § 1540(f). *See also La., ex rel. Guste v. Verity*, 853 F.2d 322, 331 n.20 (5th Cir. 1988) ("Congress has made the policy determination that endangered species are to be protected, and an administrative agency has decided that sea turtles are to be protected despite substantial economic consequences for an important industry. . . ."). Thus, the "major questions" doctrine cited by Plaintiffs, ECF No. 36 at 19, is not implicated here because Congress has already made its intent certain with respect to NMFS's authority to protect threatened and endangered species. *Id.*

In sum, Plaintiffs' arguments based on isolated examples of allegedly non-economic shrimping activities should not deter the Court from concluding that requiring skimmer trawl vessels 40 feet and greater in length to use TEDs is a lawful exercise of an activity that involves interstate commerce. *See Raich*, 545 U.S. at 23 ("[w]here the class of activities is regulated and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class") (citation omitted). The Court should grant summary judgment to Defendants on Plaintiffs' Commerce Clause claims.

### III.   The Final Rule Does Not Rely on NMFS's Regulatory Interpretation of the ESA.

NMFS's authority to regulate the incidental "taking" of sea turtles is not affected by the Supreme Court's recent decision in *Loper Bright*, 144 S. Ct. at 2273, which overruled the holding in *Chevron,* 467 U.S. 837, requiring courts to defer to an agency's reasonable interpretation of ambiguous statutory language or statutory silence. Plaintiffs incorrectly suggest that the ESA's "regulatory regime" hinges on *Sweet Home,* 515 U.S. 687, which upheld the

10

regulatory definition of "harm" based, in part, on *Chevron*. *See* ECF No. 36 at 20. Contrary to Plaintiffs' suggestion, the Final Rule does not depend on the regulatory definition of harm. *See* 50 C.F.R. § 17.3 (defining "harm" to include significant habitat modification). Consequently, Plaintiffs' argument lacks any basis.

The Final Rule regulates the incidental taking of sea turtles by harassing, injuring, or killing. *See* 84 Fed. Reg. at 70048, AR009464. These terms are encompassed within the statutory definition of taking, *see* 16 U.S.C. § 1532(19), and have plain meanings that do not hinge on any further regulatory definition. Even if the Final Rule did, somehow, hinge on the regulatory definition of "harm," the Supreme Court has made it clear that its decision in *Loper Bright* does not invalidate prior decisions that relied on *Chevron* deference. *Loper Bright,* 144 S. Ct. at 2273 ("[W]e do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful—including the Clean Air Act holding of *Chevron* itself—are still subject to statutory stare decisis despite our change in interpretive methodology.").

Neither the U.S. District Court for the District of Columbia nor the U.S. Court of Appeals for the D.C. Circuit relied on *Chevron* deference to interpret any statutory term relating to the Final Rule. *See Ctr. for Biological Diversity v. NMFS,* 628 F. Supp. 3d 189 (D.D.C. 2022), *aff'd* 2024 WL 3083338. This Court does not need to interpret any statutory term, either. Rather, the Court should review and uphold the Final Rule, based on the administrative record, applying deference to the science-based determinations of NMFS pursuant to 5 U.S.C. § 706(2)(A).

**IV.    No Remedy Is Necessary, But If The Court Disagrees, This Matter Should Be Remanded Without Vacatur.**

No remedy is appropriate here because the administrative record fully supports NMFS's decision to issue the Final Rule. Furthermore, to the extent the Court even has jurisdiction over

11

Plaintiffs' second claim for relief, we have shown that the Final Rule is consistent with the Commerce Clause and express authority conferred by Congress to regulate the killing of sea turtles. However, if the Court finds any legal violation, Defendants respectfully request the opportunity for supplemental remedy briefing to ensure that any remedy is appropriately tailored to any specific legal violation. Under no circumstances should the Court vacate the Final Rule as requested by Plaintiffs, *see* ECF No. 36 at 21.

The Final Rule is anticipated to result in a conservation benefit of 801-1,168 sea turtles annually in the Southeastern U.S. shrimp fisheries. 84 Fed. Reg. at 70049 (AR009465). It follows that vacating the Final Rule may result in the killing of 801-1,168 sea turtles annually. Given the conservation-related imperative of the Final Rule, the Court should exercise its equitable discretion to retain the Final Rule in effect pending remand if the Court finds any legal deficiency.

## **CONCLUSION**

It is undisputed that skimmer trawl vessels capture sea turtles in Louisiana's inland waters. ECF No. 36-2 at 3. The Final Rule reduces the number of threatened and endangered sea turtles that are captured and killed by skimmer trawl vessels. Therefore, the Final Rule is consistent with the authority expressly conferred by Congress to regulate the killing of sea turtles pursuant to ESA Sections 4(d) and 11(f). Furthermore, the record demonstrates that NMFS fully explained the basis of its decision in the Final Rule to require the use of TEDs among skimmer trawl vessels 40 feet and greater in length. For all the reasons set forth above and in our opening memorandum, the Court should uphold the Final Rule, grant summary judgment in favor of Federal Defendants, and deny Plaintiffs' motion for summary judgment.

Respectfully submitted this 3rd day of October, 2024.

By:           TODD KIM
             Assistant Attorney General
             Environment and Natural Resources Division
             S. JAY GOVINDAN, Section Chief
             MEREDITH L. FLAX, Deputy Section Chief


               /s/ Mark Arthur Brown
             MARK ARTHUR BROWN, Senior Trial Attorney
             United States Department of Justice
             Environment & Natural Resources Division
             Wildlife & Marine Resources Section
             P.O. Box 7611
             Washington, D.C. 20044-7611
             Tel: (202) 305-0204; Fax: (202) 305-0275
             Email: mark.brown@usdoj.gov

             *Counsel for Defendants*

Of Counsel:

Shepherd R. Grimes
Attorney-Advisor
Office of the General Counsel
National Oceanic and Atmospheric Administration
U.S. Department of Commerce
263 13th Avenue South
St. Petersburg, FL 33701
Shepherd.Grimes@noaa.gov